## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**SAVOIL KING and DOROTHY KING,**                                **PLAINTIFFS**
**for themselves and all Arkansas residents**
**similarly situated**

**v.**                                **CASE NO: 3:14-CV-00183 BSM**

**HOMEWARD RESIDENTIAL, INC. and**
**OCWEN LOAN SERVICING, LLC**                                **DEFENDANTS**

## ORDER

The motion to certify class [Doc. No. 114] is denied because the proposed class definition does not satisfy Federal Rule of Civil Procedure 23.

## I.  BACKGROUND

Plaintiffs Dorothy and Savoil King first filed this class action complaint on July 28, 2014, asserting claims under the Arkansas Deceptive Trade Practices Act ("ADTPA") and unjust enrichment.  On May 9, 2017, notice of Savoil King's death was filed [Doc. No. 147], and so plaintiff Dorothy King is henceforth referred to in the singular.  King claims she purchased a home in 1994, her mortgage was serviced by Homeward Residential Inc. ("Homeward") and Ocwen Loan Servicing, LLC ("Ocwen"), and the mortgage contract expressly gave her servicer the right to purchase insurance for King's home and charge her for ("force place") it if she allowed the insurance on the home to lapse or become inadequate. Second Amended Class Action Complaint ¶ 2, Doc. No. 110.  King claims that, despite having insurance coverage on her home, the defendants wrongfully force placed insurance on her home twice, once for a period of approximately two years. *Id.* ¶¶ 35, 44, 45.

In essence, King brings two entirely distinct claims.  First, defendants knew that she did not let her insurance lapse, so she should not have been "double-billed" for insurance. *Id.* ¶¶ 20, 45.  Second, the force place insurance premiums were "excessively high" as a result of collusive and anti competitive practices on the part of the defendants, who were motivated by kickbacks.  *Id.* ¶¶ 19, 27, 45.  In support of the second claim, King has consistently represented that "the claims here are not that the rates are excessively high," *see, e.g.*, Doc. No. 126, at 2, but instead that she is merely challenging Homeward's decision to purchase insurance from QBE when the premiums charged by QBE were excessively higher than the premiums charged by other insurers.  *See, e.g.*, Doc. No. 138 at 1–2; *see also* Doc. No. 35, at 5 (holding that, King is "not challenging insurance rates").  But, King's complaint clearly claims that she was charged an "excessively high premium."  Second Amended Class Action Complaint ¶ 45.

King's claims under the ADTPA and for unjust enrichment were dismissed. Ultimately, the Kings amended their class action complaint [Doc. No 49] to assert a claim for breach of contract, and that claim was dismissed as well [Doc. No. 56].  The Kings appealed.  The only issue on appeal was whether their claim for unjust enrichment was properly dismissed, *see* Doc. No. 75, at 1, and the Eighth Circuit Court of Appeals vacated the dismissal of the unjust enrichment claim and remanded.  *Id.* at 3.

On remand, King is proceeding on theories of unjust enrichment and conversion based on the allegations in her second amended class action complaint, and she moves for class

certification [Doc. No. 114].  She wants an injunction, restitution, and punitive damages.

King admits that defendants have returned her force place insurance premiums to her but

appears to be requesting the payment of interest on those payments.  *See* Doc. No. 138, at 3

("Defendants only returned the money it had taken from Dr. King after wrongfully force-

placing insurance on her on two separate occasions, and after she was forced to file this

lawsuit against them to get them to stop.").

## II.  LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and

on behalf of the individual named parties only.  To come within the exception, a party

seeking to maintain a class action must affirmatively demonstrate his compliance with Rule

23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) (internal quotations omitted).  Thus,

class certification is only appropriate when the four threshold requirements of Rule 23(a) are

satisfied.  *Wal Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  These requirements–

numerosity, commonality, typicality, and adequate representation– "effectively limit the class

claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal quotations

omitted).  The proposed class must also fit within one of the three subsections of Rule 23(b).

*Comcast Corp.*, 133 S. Ct. at 1432.

## III.  DISCUSSION

King's proposed class includes all citizens of Arkansas who a) had a mortgage or deed

of trust securing a loan on real estate within the state of Arkansas, b) where the loan was

serviced by Homeward, c) where Homeward force placed insurance on such property and demanded the premiums be paid to it, and d) who, from June 5, 2009, through the date of entry of an order certifying the class, paid or who still owe premiums for the force place insurance secured by Homeward.  Motion to Certify Class, Doc. No. 114, at 2.  The proposed class excludes anyone who has filed a claim in court for damages based upon similar allegations, anyone employed by any defendant, and the presiding judge over this action and his immediate family members.  *Id.*  Essentially, the proposed class includes anyone who had insurance force placed by Homeward since June 5, 2009, regardless of whether his or her insurance policy had lapsed and regardless of what type of real estate the mortgage or deed of trust secured.  King says as many as 3,900 class members fitting this class definition have been identified.

A.   Rule 23(a)

Numerosity is not a contested issue and it does not likely pose a problem for King's proposed class. Numerosity requires that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Classes containing as few as 25 and 35 members have been certified.  *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 131 (D. Minn. 1985).

Commonality, typicality, and adequacy, however, do present problems for King's proposed class.  *See Dukes*, 564 U.S. at 376 n. 5 (discussing that commonality, typicality, and adequacy requirements tend to merge); *Pipes v. Life Inv'rs Ins. Co. of Am.*, 254 F.R.D. 544,

4

549 (E.D. Ark. 2008) (typicality has a qualitative aspect related to commonality and adequacy that requires a named representative to be a member of the class she seeks to represent). In addition to requiring "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), commonality is interpreted to require that "the plaintiff demonstrate that the class members have suffered the same injury." *See Dukes*, 564 U.S. at 349–50 (internal quotations omitted). The class members' claims "must depend upon a common contention" the truth or falsity of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "In general, typicality is established if the claims of all the class members arise from the same event or course of conduct, or are based on the same legal theory." *Haney v. Recall Center*, 282 F.R.D. 436, 440 (W.D. Ark. 2012). Because adequacy merges with the requirement that a class representative possess the same interest and suffer the same injury as the class members, a representative that fails commonality and typicality also fails adequacy. *See Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 371 (E.D. Ark 2007).

King has maintained from the beginning of this litigation that Homeward wrongfully forced insurance on her and other potential class members who did not allow their insurance to lapse, which resulted in her being "double-billed" for insurance. *See, e.g.*, Second Amended Class Action Complaint ¶ 35 ("Defendants force this insurance in disregard of the fact that the Kings and other members of the Class have homeowners's insurance in place."). Even if this common contention is resolved in favor of King, it may only demonstrate that

she is entitled to recover the entirety of the premiums wrongfully charged and perhaps the interest on those wrongfully charged premiums.  The resolution of that issue would settle nothing in regard to members of the proposed class whose insurance lapsed and who had insurance forced on them as a result, as permitted under their contracts with defendants.  *Id.* ¶ 2.  This latter category of class members who were not "double-billed" may only be entitled to a portion of the premium paid, if anything at all, depending on what is a "reasonable" rate for force place insurance.  Essentially, King asserts she should have never been charged for force place insurance, while many class members would be asserting that they were charged too much for force place insurance.

Although King asserts that the common issue is whether defendants participated in a scheme to inflate premiums and receive kickbacks, that alone is insufficient.  *See Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 571 (8th Cir. 2015) ("What matters to class certification is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal punctuation omitted) quoting *Dukes*, 564 U.S. at 376.  King is proceeding on theories of unjust enrichment and conversion, both of which will require showing that the defendants wrongfully charged people for insurance. *See Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 36 (Ark. 2011) ("To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore.  There must also be some operative act, intent, or situation to make the enrichment

unjust and compensable. One who is free from fault cannot be held to be unjust enriched merely because he or she has chosen to exercise a legal or contractual right."); *Schmidt v. Stearman*, 253 S.W.3d 35, 41 (Ark. App. 2007) ("[C]onversion is committed when a party wrongfully commits a distinct act of dominion over the property of another that is inconsistent with the owner's rights."). Accordingly, the fact that King admits that defendants had the contractual right to force place insurance on the members in her proposed class whose insurance lapsed presents a material difference between her claim for being double-billed and the claims of other class members whose insurance lapsed. By grouping both types of claim together, "[King] is comparing apples to oranges." *See Rapp v. Green Tree Servicing, LLC*, No. 12 CV 2496 PJS/FLN, 2013 WL 3992442, at *11 (D. Minn. Aug. 5, 2013) (explaining that force place policies cost more because failing to maintain insurance typically indicates financial distress or some other problem thus "expos[ing] insurance carriers to more substantial risks than voluntary policies").

In sum, King cannot satisfy Rule 23(a) because her claims are neither common nor typical of her proposed class, and she is therefore an inadequate representative.

B. <u>Rule 23(b)</u>

King has also failed to show her class satisfies any of the three prongs in Rule 23(b). King's complaint asserts that certification is proper under Rule 23(b)(1), (2), and (3). The only prong of Rule 23(b) addressed by King's briefing is Rule 23(b)(3). Second Amended Class Action Complaint ¶¶ 64–66.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The rule tests whether "proposed class members are sufficiently cohesive to warrant adjudication by representation, *Zurn Pex Plumbing Prods.*, 644 F.3d 604, 618 (8thCir. 2011), and it presents a more demanding standard than that imposed under Rule 23(a), *Comcast Corp.*, 133 S. Ct. at 1432 (noting that the same analytic principals govern Rule 23(a) and (b), but "[i]f anything Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)").

"The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).  Thus, demonstrating that one of the provisions of Rule 23(b) is satisfied requires some evidentiary proof.  *Comcast Corp.*, 133 S. Ct. at 1432 ("The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).").  King presents no evidence in this regard.  She simply reiterates the broadest theory available and asserts that other courts have found that common issues predominated in similar cases.  Doc. No. 115, at 17–18 (King states, "Some of the class certification decisions in these forced-placed insurance cases have discussed common damage modeling.  In those cases, the courts were provided a report from [an expert], and these courts found that there is a common methodology for providing restitution and presenting damages on a class-wide basis here.");

8

Doc. No. 138, at 5 ("Moreover, federal courts faced with these same forced-place insurance cases have found the [sic] common issues predominate over any issues regarding potential individual damage determinations."). Merely asserting that other courts have certified similar classes does not provide a sufficient bases upon which to properly determine whether Rule 23(b)(3) has been met. *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 333 (C.D. Cal. 2015) ("Although it appears that [an expert] has proffered an adequate model of damages in similar FPI cases, the Court cannot conclude that this model is adequate without evidence of the data upon which [the expert] relies and consideration of whether that data is pertinent to the facts of *this* case.").

Accordingly, a "class action will not be a superior method of adjudicating this case because the reasonableness of any [insurance premium paid] may have to be individually analyzed." *Halvorson v. Auto Owners Ins. Co.*, 718 F.3d 773, 778, 780 (8th Cir. 2013) (denying certification because plaintiffs could not establish that damages were capable of measurement on a classwide basis as required by *Comcast Corp. v. Behrend*). King does not rebut defendants' contention that the analysis required for King's class will rely heavily on the facts of each individual class member and the specific property insured. *See* Doc. No. 130, at 18. Defendants assert that "the 'true' cost of force-placed insurance in each case might depend on the location of the property, the value of the property, the personal characteristics of the borrower, the circumstances of the insurance market at the particular time and in the particular location, and countless other variables." *Rapp v. Green Tree*

9

*Servicing*, LLC, 302 F.R.D. 505, 510 (D. Minn. 2014) (denying class certification).  Thus, "[w]hether and to what extent [the defendant] charged any particular borrower more than the 'true' cost of insurance would thus be an individual question, not a common question." *Id.*

Certification under Rule 23(b)(2) is proper only when the primary relief sought is declaratory or injunctive. *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 4:11CV00749 JM, 2015 WL 11234131, at *2 (E.D. Ark. Apr. 30, 2015); *Pipes*, 254 F.R.D. at 551.  That is not the case here.  And, because unnamed members have no opportunity to opt out of a class action certified under Rule 23(b)(2), "even greater cohesiveness generally is required than in a Rule 23(b)(3) class." *Pipes*, 254 F.R.D. at 551 (quoting *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005)).  As explained above, King's class is not sufficiently cohesive.

Finally, the same result is reached on King's request to certify under Rule 23(b)(1) because class members in a Rule 23(b)(1) class also lack the ability to opt out, *see* Fed. R. Civ. P. 26(c); *Reynolds v. Nat'l Football League*, 584 F.2d 280, 283 (8th Cir. 1978) (noting that class members in a Rule 23(b)(1) are all bound by the outcome of a lawsuit, but class members in a Rule 23(b)(3) class may opt out).

Thus, King's request to certify also fails under Rule 23(b).

## IV.  CONCLUSION

For all of these reasons, the motion for class certification [Doc. No. 114] is denied.

King has also moved for leave to reveal confidential Rule 408 negotiations [Doc. No. 141] to demonstrate that she is an adequate representative because she is not susceptible to accepting a "low dollar settlement offer" and "to provide a full explanation of the issues involving the unjust enrichment claim and the mid-August 2014 premium return."  Doc. No. 141, at 2–3.  That motion [Doc. No. 141] is denied because the points King seeks to prove by revealing confidential negotiations are not relevant to the decision rendered in this order denying certification.  King's request that a ruling on the defendants' motion for summary judgment be deferred until after the close of discovery pursuant to Federal Rule of Civil Procedure 56(d), *see* Doc. No. 133, is denied as moot because the discovery deadline was June 16, 2017.

     IT IS SO ORDERED this 27th day of July 2017.


_____

UNITED STATES DISTRICT JUDGE